IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHG COMPANIES, INC. d/b/a COMPHEALTH, a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MEDINA MEMORIAL HOSPITAL, a New York corporation<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:17-cv-00551-DB<br><br>District Judge Dee Benson |

Before the court is Defendant Medina Memorial Hospital's ("Medina") Motion to Dismiss for lack of personal jurisdiction claims brought by Plaintiff CHG Companies, Inc. ("CHG"). (Dkt. No. 12). At oral argument on the motion, CHG was represented by Michael C. Barnhill, and Medina was represented by Wesley D. Felix. At the conclusion of the hearing, the Court took the matter under advisement. Now, having considered the law and facts relating to the motion, the Court renders the following Memorandum Decision and Order.

BACKGROUND

Plaintiff CHG is a Delaware corporation registered to do business in Utah with its headquarters in Salt Lake City, Utah. (Compl. at ¶ 1; decl. of Steve Riding at ¶¶ 3-4). From its office in Salt Lake City, CHG provides *locum tenens*[1] services to hospitals and clinics throughout the country. *Id.* Defendant Medina is a New York corporation with its principal place of business in Medina, New York. (Compl. at ¶ 2). Medina does not have a physical presence in

---

[1] *Locum tenens* physicians are used when a healthcare facility requires additional physicians on a temporary basis to cover the workload.

Utah, is not registered to do business in Utah, and does not pay any taxes in Utah (Decl. of Wendy Jacobson at ¶¶ 9-14).

It is unclear from the record which party initially contacted the other, but in 2016 CHG and Medina began negotiating over a *locum tenens* agreement in which CHG would arrange for a physician to work temporarily at Medina's hospital in New York. (Decl. of Steve Riding at ¶¶ 6-10). Throughout the negotiations, Medina and CHG exchanged emails and phone calls. (Decl. of Wendy Jacobson at ¶ 7). However, no one from Medina traveled to Utah as part of the negotiation process. (*Id.* at ¶ 5).

The two parties entered into a written agreement on July 27, 2016. (Agreement). CHG screened potential candidates, and Medina approved Dr. Ian Cole, who began performing services for Medina in New York in August, 2016 and ceased in November, 2016 when Medina terminated its relationship with CHG. (Compl. at ¶¶ 6-13). CHG alleges that throughout this time period it sent bi-weekly invoices to Medina based upon Dr. Cole's submitted work records, and that Medina has failed to pay the full amount of the invoices. *Id.* The contract contains a Utah choice of law provision. (Agreement at ¶ 8.E).

## DISCUSSION

To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show (1) that jurisdiction is legitimate under the laws of the forum state, and (2) that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

**I.      Jurisdiction Under State Law**

Utah law expressly states that the Utah state long arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code § 78B-3-201; see also *Starways, Inc. v. Curry*, 980 F.2d 204, 206 (Utah 1999) ("We have held that the Utah long-arm statute 'must be extended to the fullest extent allowed by due process of law.'") (quoting *Synergetics v. Marathon Ranching Co.*, 701 F.2d 1106, 1110 (Utah 1985)). Because the Utah long-arm statute confers the maximum jurisdiction permissible consistent with the Due Process Clause, the court proceeds to determine whether the exercise of personal jurisdiction over Medina in the instant case meets federal due process standards.

## II. Due Process Analysis

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King*, 471 U.S. at 471-72 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe*, 326 U.S. at 316).

In order to establish specific personal jurisdiction[2], the court must determine whether the defendant has such "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. These "minimum contacts" are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate

---

[2] The court agrees with the parties that general personal jurisdiction does not apply here and will only address specific personal jurisdiction.

to" those activities.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King*, 471 U.S. at 472). Second, if the defendant's activities create sufficient minimum contacts, then the court must consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)). The latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. *OMI Holdings*, 149 F.3d at 1091.

When examining the contacts with the forum state, the "relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (internal quotation omitted) (emphasis in original). The United States Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third party) and the forum State." *Id.* The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* To be sure, the existence of a contract between the defendant and a party of the forum state establishes some contacts with the forum, but "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum . . . the answer is clearly is that it cannot." *Burger King*, 471 U.S. at 472. Jurisdiction can only be found if the out-of-state party "purposefully reach[es] out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State." *Walden*, 134 S.Ct. at 1122 (internal quotations omitted). Rather than the existence of a contract, it is the prior negotiations, contemplated future consequences,

the terms of the contract, and the actual course of dealing that are evaluated to determine whether the defendant has established minimum contacts sufficient to satisfy the United States Constitution. *See Burger King* at 479.

In this case, the contract with CHG is the only contact that Medina has with Utah. The contract did not envision an ongoing relationship with the forum. Rather, it was a contract for a physician to temporarily provide services to Medina in New York. While it may be true that CHG's Utah-based employees performed some of the work for locating and arranging for the services of the physician, the heart of the contract was to arrange for a physician who would provide his services exclusively in New York. CHG's decision to have its employees perform administrative work was a unilateral decision initiated by the plaintiff and is not sufficient for a finding of minimum contacts. *See Walden*, 134 S.Ct. at 1122. Furthermore, the contract did not provide CHG with any control over the physician's services to be provided for Medina in New York. The only additional contacts with Utah were payments to CHG. Under these circumstances, the contract between CHG and Medina did not envision "continuing and wide-reaching contacts in the forum" and does not establish minimum contacts with Utah.[3] *Id.*

Plaintiff argues that several emails and telephone calls between Medina in New York and CHG in Utah are enough to establish jurisdiction, but "[i]t is well established that phone calls and letters are not necessarily sufficient themselves to establish minimum contacts." *Far West Capital Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). While the emails and phone calls indicate some contact, they are not enough to create purposeful availment and establish minimum contacts with the state.

---

[3] Courts in other jurisdictions have also found that *locum tenens* contracts alone did not satisfy minimum contacts. In *Allegiant Physicians Servs. v. Sturdy Mem. Hosp.*, a district court determined that a contract and four-year relationship between a company in Georgia and a hospital in Massachusetts was not the sort of "carefully structured and regulated ongoing business relationship presented to the Supreme Court in *Burger King*." *Allegiant Physicians Servs. v. Sturdy Mem. Hosp.*, 926 F. Supp. 1106, 1118 (N.D. Ga. 1996).

The parties did agree to a Utah choice of law provision in the contract. While this is a relevant factor when examining purposeful availment, "such a provision standing alone [is] insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. In this case, despite the choice of law provision, the agreement centered on services that would be performed within a New York hospital for the benefit of New York patients.

The court concludes that Medina did not purposefully direct its activities toward Utah to create sufficient minimum contacts and that traditional notions of fair play and substantial justice do not reasonably support a finding of specific personal jurisdiction. Therefore, the court is without jurisdiction.

## CONCLUSION

For the foregoing reasons, Medina's Motion to Dismiss for Lack of Personal Jurisdiction is hereby GRANTED. This action is dismissed without prejudice for lack of jurisdiction.

DATED this 27th day of November, 2017.

BY THE COURT:

_____
Dee Benson
United States District Judge